We'll next hear the case of Kelly v. Commissioner of Social Security 08-1652. I'll take that last case under advisement. Also, I forgot to mention when I moved in one of my clerks. It's Irene Eisenberg's birthday today, so make sure you say happy birthday to her if you see her in the hallway. Hold on counsel, we'll wait until your adversary gets settled. All right, counsel will hear from you now. Good morning. Good morning. May it please the court. My name is Scott Dye and I'm here representing the appellant, Ms. Kelly, in this case. And I would request that three minutes of my time be reserved for rebuttal. Granted. The primary issue in this case is whether the funds from the sale of a marital home being held in escrow pending the settlement of a divorce action should be considered a resource available to somebody applying for supplemental security income. Now, that's an important distinction that may not be necessary for a regular social security case because with SSI, the claimant must show not only a disability but a financial need as well. In this case, Ms. Kelly, who has very severe Crohn's disease, applied for disability when she and her husband separated. Pending the divorce, the home was sold, funds put into escrow, and because she had no way to support herself and had no other resources, she did apply for SSI. She was turned down at the initial level because Social Security considered the escrow account to be available to her. The period of disability, we know in it, well, at least in terms of what you're seeking here, it ends in 2007, I believe, July. Yes, she was eventually found disabled. Right. How far back does it go? Well, for the purposes of our case here today, it doesn't matter before 2003 when the initial application took place because she can't get anything before that anyway. You said she was found disabled. That's not exactly right, is it? She was found that she had exhausted or spent down that money because there was never any dispute that she was disabled. That's true. The judge admitted, if you read the transcripts, that clearly she's disabled. It's just a matter of- The only question was that level. So at some point she spent that money down, it was gone, and she was able to meet that level. At some point she was- She applied. Correct. At some point she was eligible to obtain the money. Of course, I- Might have been eligible before she applied. So what you're seeking is the money between the money that she would have gotten if she had been found when she applied in 2003 or 2004 until 2007. That's correct. All right. And I don't think you need to be concerned. There was a lot of discussion in the brief. I think I'm correct. I don't think you need to be concerned if you think there was any fraud or anything of that sort. It's a policy issue under the trust statutes that came up later, but no one casts aspersions at your client. I agree. And I don't know whether you're adversarially meant to cast aspersions either, but nonetheless we're construing laws here that can be used by others, and we worry we don't want to open up a big hole that might not-should not be opened. And there are a number of concerns here. I mean, basically we're looking at three separate areas of Social Security law and policy. The regulations version, in effect, was, I believe, last updated in 1994, which indicates what constitutes a resource. And that looks primarily at does the person have access to the funds. We also need to look at, however, the Act itself, which as- But even that, 94, doesn't say immediate access. Well, no, but, I mean, in order to-and the purpose of the SSI program is to show-is to allow you to live from day to day. I mean, you cannot have more than a certain amount of funds available, but you do have to have access to the resources. Cutting to the heart of the problem, this record doesn't show what the terms of the escrow were. It was just an agreement between this woman and her estranged or former husband about what to do with the money pending resolution of the issues in the divorce. We have no idea whether they could have done it. All we have is a somewhat late letter from a lawyer that's undated saying she didn't have access to it. Doesn't this boil down to two issues? First, whether the escrowed funds are a subject, and then second is the evidence, whether the ALJ's decision was supported by substantial evidence if the court finds that the escrow was subject to that. Because there could be escrows where you couldn't count it. There might be facts where you couldn't count it. That's true, and there's no question- And the burden of that is on your client, isn't it? It is, and there's no question this is a very bizarre case. I mean, you almost never see an SSI applicant who has $40,000 plus in escrow. That being said, the judge does-the administrative law judge does have an obligation. I mean, this is not an adversarial process. It does have an obligation to assist in-especially, I believe, in a new case like this, explaining what evidence would be helpful in showing that access was not available. There's really no precedent. The only thing the judge seems to indicate at the hearing level is, gee, I don't know, gee, I don't know. So we really didn't know what to provide. We did our best by attempting to get the affidavit. What the ALJ does know, or did know, is that it was an escrow agreed to by those parties. That's true. And people who agree to something can modify something. Well, that's true, but if it was a contentious divorce, it doesn't seem very likely that the husband is just going to say, okay, you have $13,000 in medical expenses, go ahead and take- Was there ever a chance she'd get zero out of that escrow? Well, anything was possible. That was the whole point of the escrow. We didn't know if she was entitled to zero, to half the funds, to nothing. We just didn't know. And it's important to point out that, really, Social Security is not in any way negatively affected by this because, according to the regulations, even if she had gotten the money directly, okay, and it wasn't an escrow, that money would have only counted as an unearned income in the month it was received, and it would be considered a resource after that first month. So she could have spent the money down anyway. I mean, you're looking at, if she was entitled to half, $21,000 approximately, that money would have been gone long before the almost four years we're here looking at it. So she was unfairly prejudiced by what the administration has done. So actually what it boils down to is the commissioner has had three different interpretations at three different levels of what's going on here. The administrative law judge does not mention the POMS. The administrative law judge does not mention the portion of the Trust Act that we're here discussing and the commissioner is now bringing up. That wasn't brought up until the appeals council level. Actually, the administrative law judge indicated that this was just a matter of whether or not the residential home, now that it had been sold, should be considered a resource. They didn't even look at the escrow issue. I mean, the portion he refers to in the regulations has nothing to do with escrow funds or trust funds. So with respect to the POMS, it's an interesting issue. Obviously, if it's contrary to the statute, we shouldn't be giving it any type of deference, but why shouldn't we otherwise give it deference? I mean, the statute doesn't mention escrow accounts. Well, for a couple of reasons. First of all, it's arbitrary and capricious in this case. If you look at what the appeals council says, it's really pretty remarkable. I mean, the appeals council states, okay, you have an escrow account. We're considering that escrow account to be a trust. However, you did not prove it was an irrevocable trust, and so you can't qualify for benefits. They're comparing apples and oranges and saying, okay, you have an orange, but since you can't prove it's not a granny apple, we're considering it a delicious red. It just doesn't make sense. Isn't there a statement in the POMS that says that you can consider an escrow to be like a trust? That's what it does say. That's what the POMS does say. And how do you say that that's inconsistent with any statute? Well, first of all, it's inconsistent with the regulations, and the regulations require that you have access to the funds. But secondly, the Social Security Commissioner in this case is arguing that it doesn't make any difference if you have access or not because they're considering a trust, whether it's revocable or irrevocable, to be a resource. I mean, that's their latest interpretation. That's not even what the appeals council said. This is now what they're saying now. So, again, they've had three different interpretations of three different levels. In counsel's brief, what you're saying, right? What's that? In counsel's brief, right? Correct. I mean, that seems to be what they're stating now, even though that was not what they were stating before. I mean, at least initially, you had the chance to prove it was an irrevocable trust. Apparently, according to the appeals council, and show why you did not have access, which is what we attempted to do at the hearing level. And, again, that was not addressed by the judge. Well, simply because an ALJ doesn't address an issue of law or a legal argument doesn't preclude this court from considering that legal argument. Well, that's correct. I mean, that's correct. But, again, I mean, when you're applying trust terms to an escrow account, you're going to get inconsistencies. I mean, an escrow account is not a trust. Matter of fact, even if you're. An escrow covers a wide range of devices. And nowhere, either in your brief or in the other side's brief or anywhere does anybody discuss what kind of escrow animal this is. We don't know. We don't. It could have been oral. It could have just been an oral agreement between the two lawyers of the parties that we'll keep it in this bank account until it's over. Do we even know whether it was. We don't know that it was written. The concern was there was not a court order, I believe, is what. Well, even a court order. Of course, you go to a court and say, can I have it to educate my daughter or can I have it to go to Cancun or something? You can do anything and get the money. You could. But in this case, again, it was a contentious divorce. It drug out for four years. There was no way the other side was going to give her one penny of this money. It just was not going to happen. Now, we'd have been happy if the judge had required to get a statement from the opposing counsel saying that was going to be the case. What would have happened if the ALJ had come out differently and said, well, it's in escrow, so I can't count it. Here's your SSI. And 24 hours later, she gets $40,000. Then she would have lost, again, at the time she received that money, it would be considered unearned income for that month. Every month after that, it would be deemed a resource until it was spent down below the $2,000 level. So the SSI calculus would be done again every month? Yes. Until that money is below the $2,000 threshold, she would not get a penny of SSI money. How does that work? Does she have to submit a report? She would have to notify. Otherwise, it would be fraud. She's responsible just like anybody would, whether it's welfare or SSI, whether you get an inheritance or win the lottery or what have you. Yes, she would be responsible for reporting that to the administration. Thank you. If there are no other questions, I will reserve 30 seconds for my rebuttal period. Will do. Thank you. May it please the Court, Beverly Zuckerman on behalf of the Commissioner of Social Security. I would just like to briefly address two preliminary matters that counsel brought up. One is that the period at issue for the purposes of this case is from the alleged date of onset of 2003 through the date of the ALJ's decision. And secondly, with respect to his claim that the ALJ had a duty to assist, that argument is waived. That was not an argument that was raised in his initial brief and therefore is waived. In this case, plaintiff has prevented no evidence to show that the escrow account was not a countable resource. The subsequently amended statute and the POMS, which is the agency's program operations manual, supports the Commissioner's position that the escrow account was a resource. The POMS is consistent with the statute and is entitled to deference, and the law supports this. I've cited Walton in my brief, and there is also a decision of this Court which specifically dealt with the POMS, and that's San Filippo v. Barnhart, 325 F. 3rd, 391, 3rd Circuit, 2003. The statute as amended and the POMS, which tracks the statute, specifically provide that the question of access to a trust or a trust-like document is irrelevant to resource counting under the SSI program after the 2000 amendments. And Congress included a very, very bright, very bright line rules with respect to trusts and trust-like devices to facilitate correct administration of the program given concerns with respect to fraud and waste in the SSI program. And I'd like to give the Court just a little background with respect to the SSI program. It was created in 1972 pursuant to statute, and it's not an entitlement program, as is the disability insurance program. It's based on need rather than contributions to the Social Security Disability Trust Fund. The statute defined what is meant by needs and eligibility requirements, including the definition of resource. Eligibility is created by and defined by the statute. The statute was updated and amended beginning in 2000 with respect to the treatment of trusts and trust-like devices, such as escrow accounts. And in amending the statute, the agency or the Congress was particularly concerned with fraud and abuses in the SSI program. The statute itself doesn't mention escrows. No, it doesn't. It's only the POMS that go on to say something. The statute speaks to trusts or devices similar to a trust. And in the POMS, the POMS specifically sets forth the criteria as to why an escrow account and certain other types of devices are similar to trusts, and sets forth and takes off those criteria. So it certainly was consistent with the statute. The statute didn't simply say trusts and end there. The statute referred to trusts or trust-like documents. But there was really quite a bit of concern prior to the amendment of the statute. In fiscal year 1997, there was over a billion dollars in newly detected overpayments in the SSI program. And in a letter from the General Accounting Office to the Chairman of the House Budget Committee, this was discussed. And there were also concerns with respect to this billion dollars in overpayments, because the agency was expecting to only recoup less than 15 percent of that. So this is kind of the background for this. And the concern was that the SSI program was a welfare program. It was not an entitlement program. And there was concern about stronger asset and verification policies in the SSI program. And within this context, the statute was amended in 1999 to take effect in 2000. And there was different treatment with respect to trusts and trust-like devices than had been. So Congress saw this as a way to close a loophole where people were trying to kind of hide the ball, I guess, right? Well, that could really happen in these programs. She's disabled. Husband's suddenly out of work. And it would be very easy to say, okay, now we'll file this complaint in divorce. They're living in a house. They have a home. And we've got $100,000 in assets or a million dollars in assets. And we're just simply going to say it's in escrow. We're not going to provide any information as to the terms of that escrow. And we're going to say, okay, now we are eligible for SSI. Would your position be different if evidence had been adduced in this case that the parties agreed to put this money in escrow for the education of a daughter, and that the sums were to be used solely for that purpose beginning in 2010? And could not be used for any other purpose. Would that have been a countable asset? It would have been countable. Even though the parties had agreed to put it in escrow and agreed that that escrow would not be drawn down until 2010, and then for purposes of educating or caring for someone. Well, we're talking about under any circumstances could you get to those funds. That's in any circumstances language is in the statute. And the POMS talks about no matter how unlikely or distant in the future. And also the very relevant language of the statute is it says the subject shall apply to a trust. So are there any circumstances in your view under which an escrow would not be a countable asset? Well, there's one exception, and that is for the special needs trust. If it were indeed like a special needs trust or a subdivision of a special needs trust, which would be a pool trust. But basically if there are circumstances under which somebody can reach those assets, and we have that here. Depends on how available the assets are, right? I mean, if the assets are tied up in knots and they're unreachable, as Judge Ellis' hypothetical seems to suggest, then they wouldn't be countable, right? They would under the new statute and the POMS. They would be accountable. They would be countable? They would be a countable resource. The access issue is no longer controlling. And it may seem like a hard thing. I mean, that seems quite different in this case. I mean, in this case there's no evidence to that effect, is there? That they were unreachable by Ms. Kelly. That she, by law, by some legal document, the assets were so tied up that she could have no access to them. There's no evidence of that, is there? We don't really know. We don't have a document. We don't have any evidence here. But it doesn't really matter because the access is really, really not a controlling issue. You said unless it's a special need. Unless it's special. What's that? Okay, it's a particular type of trust involving disabled individuals, and it involves certain types of paybacks. My hypothetical, if the daughter were disabled, then that would be not countable. I don't know the ins and outs of the special needs trust. I don't think that it's applicable here. And counsel hasn't argued that it is applicable here. Your point is that under the statute, immediate access is not required. Yes. I mean, the... Your answer, yes, I know you nodded. Immediate access, a person, access is really not relevant under the statute. And it may seem a harsh result in these circumstances, but... Well, you do have to have access. It just doesn't have to be immediate access. That's right. I mean, if you have to have access, otherwise it's not countable at all. It was countable. It's somebody else's money. It's not countable. You don't have access to it. Right. But once she got access and spent it down, she then became eligible for those benefits. And the statute is really very, very clear because it talks about any restrictions on when or whether distributions may be made from the trust. And there were also undue hardship provisions under the statute. That's at POMS SI-011-20.203. And when you have a person, when there is a situation where there is indeed a countable resource, when the trust or the trust-like document is countable, and the claimant can show that certain conditions exist with respect to undue hardship, there is a remedy here. It's not a complete freefall or there's a safety net under this statute. Congress drew a bright line with respect to the statute and how they wanted to view these escrows and other trust-like devices. And the issue of immediate access is really not relevant to this inquiry. Unless it's a special needs trust or a pooled trust, which is a subdivision of a special needs trust, we will count these. As long as you have a claim to money, it will be counted. Yes. Are we reviewing the decision of the ALJ alone or also the decision of the appeals? Well, the ALJ's decision is the final decision of the Commissioner. The Appeals Council denied plaintiffs' request for review. But the Appeals Council, because the ALJ's decision was correct, that this was a countable resource. But the Appeals Council elaborated upon this and set forth the relevant law. And although that was an additional determination made by the Appeals Council and elaborated upon that. I mean, the only other thing the Appeals Council might have done would have been to say, okay, send this back to the ALJ and let the ALJ basically say the same thing. That's a six-sentence remand issue between you all on the letter from the lawyers. Yeah, and basically what happened there was that the Appeals Council looked at what was provided, which was the affidavit from the attorney, the divorce attorney. And based upon that letter, it really set forth, showed that she would be able to get access at some point in the future. Oh, at some point in the future. Yeah, I mean, the affidavit said that she would not get less than 60% of those assets. So the affidavit specifically provided that she would be getting something at some point in the future. And that's consistent with the statute's language of any circumstances, and it's consistent with the POMS, which speaks about obtaining this no matter how unlikely or distant in the future. And the affidavit showed that she was likely to obtain this. And as set forth in the appendix, we have an award letter showing. I mean, we have an award letter showing, and we have the letter from her attorney showing that she did, indeed, get this money at some point in the future. And that's really the test, is what we see. Could this person get access at some later point? This immediate access is not really the issue here. It's can they get access at some point. The Valachi affidavit showed that she was likely that she would get access to some of these funds at some point. And the letter which counsel submitted to the district court showed that she did, indeed, get the monies. And if in the interim there had been a hardship-type situation, had that plaintiff chosen to avail herself of that, there may have been a remedy, but that's not been raised here. I suppose the funds had been escrowed pursuant to a court order that stated that she would not have access to those funds until the final decree of divorce was entered. She would have access to them at some point in the future, at some point in the future. And that's really the issue. Under any circumstances, could she obtain access? And the circumstance would have been that at the end of the divorce proceeding, she would have obtained access to those funds. So in the interim, if she doesn't have any money and she's disabled and aged and everything else, she goes without SSI? No, she can avail herself of the hardship provisions, and that's pursuant to the statute and the POMS, or Undue Hardship Provisions under POMS SI 01120.203. And she has to show certain things, that she doesn't have shelter, that she doesn't have food. This has never been alleged here. And to show that the document itself or the escrow or the trust-like agreement specifically says that she can't get to those funds for shelter or food. We don't have anything like this. She's not alleged that this was the case. This is not the harsh result that it may seem, because there are exceptions. And there's, of course, the special needs exception and the hardship exception. I see that my time is up. Thank you, Counsel. Well, based on what the claimant has once against or the Commissioner has once again indicated here, I think it's kind of obvious how draconian this statute is being interpreted here. I mean, even if we had produced evidence to the judge that the claimant absolutely did not have any access to these funds in escrow, it would make no difference. That is not consistent with the act. But how could there even be evidence like that? I mean, it was a marital home. By law, what state are we talking about? It's Pennsylvania. Pennsylvania. So by law in Pennsylvania, the wife gets no less than X amount and no greater than 60 or something like that, as I recall. So on these facts, there's no doubt she was going to get money from the sale of that house. Well, we didn't know, again, you also have to look at how much is she going to realize. I mean, if she's not eligible to receive SSI and she's having to go into debt to pay medical bills or so or what have you, she's not going to have anything left, which was one of the points of the Miranda case. An affidavit was presented in that case showing that, hey, what's the real estate case in that? That was a trailer, and by the time the trailer – you couldn't sell the trailer for what the trailer was worth. And the point was, by the time that legal action was resolved, there would be nothing of value left to give to the claimant. But if she's paying lawyers with this $20,000 or $40,000, that's still money that she has. She just chooses to pay lawyers, which may or may not be prudent in the circumstances. But again, the judge had an obligation to at least give some indication as to what would be helpful evidence to allow her to – Why isn't that her lawyer's obligation? Well, we did provide something. He just didn't discuss it, so we don't know. You mean the lawyer's letter? The affidavit from the – That came late. Actually, it was not late. There was a dispute about whether it was late. There was a dispute. I mean, it was submitted within the two weeks, and it wasn't acknowledged at all. And that alone is – That doesn't really say she didn't have access ever. It just said that – She did not have access until the divorce settled, and that's the relevant part here. And again – What else? I mean, this is an uncross-examined letter. Unsworn, too. I think it was – I think it did something, yeah. It signed it under – It was signed. But again, the claimant should have an opportunity, all right, if that evidence – if the judge does not feel that evidence is good enough to get an affidavit from the judge or from the opposing counsel. I mean, if it's clear – I don't, in trying cases, don't say, oh, by the way, that piece of evidence you just put on is not going to be persuasive. I'm going to tell you now so you can run out and get some more witnesses and put them on. That's why lawyers go to law school or are trained to do what they're supposed to do. But again, we provided – the evidence is uncontroverted in this case, that she did not have access. If that's not sufficient, he could have asked for more, and he should have. And he didn't discuss it at all, which is a reverse lawyer in and of itself. Thank you, counsel. Thank you. Thank you for the excellent briefing. And argument counsel will take the case under advisement.